[Crim. No. 37012. Second Dist., Div. Five. Dec. 9, 1980.]

In re TODD L., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
TODD L., Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Richard A. Curtis, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and Beverly K. Falk, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

ASHBY, J.—The juvenile court found that appellant committed petty theft. (Pen. Code, §§ 484, 488.) Appellant was removed from the custody of his parents for six months for suitable placement, and various conditions of probation were imposed.

On the evening of July 25, 1979, Carla Ward placed her purse on her Moped parked in front of a library in Reseda. Appellant and two other boys came riding by on bicycles, and appellant grabbed her purse. Miss Ward caught hold of the slowest boy, Jerry, and told him, "You better tell your friend to come back with my purse." He yelled out, and appellant dropped the purse in the parking lot and continued riding away. She recovered the purse and her money, although a bottle of perfume, makeup and a makeup bag were ruined.

She traced appellant through the boy she had stopped. Appellant admitted to her, to the police, and to the probation officer after adjudication, that he took the purse. Appellant indicated that when he saw the purse he thought he could get away with taking it for the money but he got scared when the victim started yelling and caught Jerry.

Since the issues on appeal relate to the disposition, we state in some detail the facts shown by the probation officer's report. Appellant was 16 years old. Besides the instant offense, he had two other very recent arrests. The first was for possession of tuinal (Health & Saf. Code, § 11377, subd. (a).) A petition had been requested but the district attorney had rejected it. As to this arrest, appellant and his friend, Jerry P., were found wandering in the middle of the Reseda Boulevard almost being struck by traffic. Appellant was standing on what appeared to be a tuinal capsule and was stuttering, apparently under the influence of a drug. The second arrest, also drug related, was for violation of Penal

Code section 222.[1] A petition had been filed but not yet adjudicated and the probation officer had no details as to that offense.

Appellant's parents separated in 1977 and appellant was living with his father and two brothers. Appellant's father could not control him in the father's home. Appellant had not been attending school or working. He came and went as he pleased and smoked marijuana. The father suspected him of committing burglaries in the neighborhood or dealing in drugs. The father no longer wanted appellant in his home and felt appellant should be placed in a structured situation.

Appellant's mother was living with a boyfriend and the boyfriend's two sons, Jerry P. and Allen P., who were the two boys riding bikes with appellant at the time of this crime. The mother related that appellant has had a "lack of conscience" ever since he was a small child and had been unwilling to accept any discipline. Her boyfriend's attempt to discipline appellant had led to numerous conflicts. She could not control appellant and was adamant he should be placed in a structured situation.

Appellant was resentful that Jerry and Allen lived with appellant's mother. Under "Minor's Statement" the probation officer related that recently appellant had gone over to his mother's house, where he was not allowed, and had beat up Jerry, "who had used up some of the money that the minor had stolen from his 19 year old brother, Marvin, in order to buy pot. The minor was walking around with a broken glass bottle, near the house when the mother called the police and he was almost arrested on assault charges. The minor stated that he picked up the glass bottle because his mother's boyfriend tried to run over him with his truck."

The probation officer recommended suitable placement with several standard conditions of probation regarding alcohol, narcotics, and psychiatric or psychological testing. The trial court agreed, and added several other conditions.

---

[1]Penal Code section 222 provides: "Every person guilty of administering to another any chloroform, ether, laudanum, or other narcotic, anesthetic, or intoxicating agent, with intent thereby to enable or assist himself or any other person to commit a felony, is guilty of felony."

■ Appellant does not contend that the order of suitable placement was improper, but argues that several of the conditions of probation are unreasonable in the circumstances of this case. The conditions of which he complains are: "16. Minor not to own or have any dangerous or deadly weapon in his possession, nor remain in any building or vehicle where any person has such a weapon, nor remain in the presence of any armed person. Includes broken bottles.

"19. Not drink any alcoholic beverages. Not be present where any person ·is consuming alcoholic beverages or where there is an open container of alcoholic beverage.

"21. Not use or possess narcotics, other controlled substances, related paraphernalia or poisons, and stay away from places where users congregate.

"25. Minor to submit his person and property to search and seizure at any time of the day or night by any law enforcement officer with or without a warrant and [suitable placement] staff.

"26. Cooperate with Probation Officer in any plan for psychiatric, or psychological testing, counseling or treatment."

■ In criminal cases involving adults, it has long been the rule that a condition of probation will not be held invalid unless it (1) has no relationship to the crime of which the offender was convicted; (2) relates to conduct which is not in itself criminal; *and* (3) requires or forbids conduct which is not reasonably related to future criminality. (*People* v. *Dominguez* (1967) 256 Cal.App.2d 623, 627 [64 Cal.Rptr. 290]; *In re Bushman* (1970) 1 Cal.3d 767, 776-777 [83 Cal.Rptr. 375, 463 P.2d 727]; *People* v. *Lent* (1975) 15 Cal.3d 481, 486 & fn. 1 [124 Cal.Rptr. 905, 541 P.2d 545].) Appellant cites two recent cases which suggest that a condition which theoretically satisfies the third requirement by deterring future criminality may nevertheless be invalid if it does not bear a reasonable relationship to the crime of which the defendant was convicted or if it is excessively severe in light of the seriousness of the crime committed. (*People* v. *Keller* (1978) 76 Cal.App.3d 827, 838 [143 Cal.Rptr. 184]; *In Martinez* (1978) 86 Cal.App.3d 577, 581-582 [150 Cal.Rptr. 366].) In *Keller*, the court struck down a "search" condition imposed upon a conviction of petty theft for stealing a 49-cent ballpoint pen, where there was no evidence the theft was in any way related to use of drugs, with which the defendant had experimented

several years before the theft. In *Martinez*, the court struck down a search condition imposed upon a conviction of battery where the defendant had thrown a beer bottle.

Appellant focuses narrowly upon the theft of the purse in this case and argues that none of the above conditions of probation is valid, contending there is no evidence the theft was drug or alcohol related, appellant did not use a deadly weapon, appellant did not conceal the purse, and there was no expert testimony that the crime was induced by a mental condition requiring psychiatric counseling.

Appellant's argument fails to take into account the special purposes of the Juvenile Court Law. A condition of probation which is impermissible for an adult criminal defendant is not necessarily unreasonable for a juvenile receiving guidance and supervision from the juvenile court.

For instance, in the case of *In re Wayne J.* (1979) 97 Cal.App.3d 776 [159 Cal.Rptr. 106], the minor was found to have possessed less than one ounce of marijuana and was placed home on probation under the supervision of the probation officer. The minor argued he should be able to avoid probation by paying a fine of $100, the punishment for an adult. The court rejected this argument, finding a legislative intent in the Juvenile Court Law to provide needed guidance and professional counseling to help the juvenile mature into a responsible adult. (*Id.*, at p. 783.) Also, *In re John R.* (1979) 92 Cal.App.3d 566, 569 [155 Cal. Rptr. 78], held that a juvenile may properly be placed on probation for a longer period than legally permissible for an adult because, in light of the primary purposes of the Juvenile Court Law, the probation supervision was more likely to be a beneficial influence than in the case of an adult.

The purposes of the Juvenile Court Law include "to secure for each minor under the jurisdiction of the juvenile court such care and guidance . . . as will serve the spiritual, emotional, mental and physical welfare of the minor . . . and, when the minor is removed from his own family, to secure for him custody, care and discipline as nearly as possible equivalent to that which should have been given by his parents." (Welf. & Inst. Code, § 202.)

The conditions of probation also assist the suitable placement staff, and ultimately appellant's parents, in providing the kind of discipline appellant needs. In a somewhat similar context, involving physical confinement, *In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549], states, "'[t]he liberty interest of a minor is qualitatively different than that of an adult, being subject both to reasonable regulation by the state to an extent not permissible with adults, and to an even greater extent to the control of the minor's parents. . . .' When the minor must be removed from the custody of his parents for his own welfare or for the safety and protection of the public, the state assuming the parents' role, the state also assumes the ·parents' authority to limit the minor's freedom of action." (Citations omitted.)

 Thus in planning the conditions of appellant's supervision, the juvenile court must consider not only the circumstances of the crime but also the minor's entire social history. (See *In re Wayne J., supra*, 97 Cal.App.3d at p. 782; accord, *In re Martinez, supra*, 86 Cal.App.3d at p. 581.) Viewed in this light, the conditions in this case were proper.

A possible drug problem was indicated by two arrests for drug-related offenses occuring within weeks of the instant crime, as well as the incident with Jerry P. involving a dispute over money "to buy pot." It was proper to impose drug-related conditions, and it is well established that a consent to search condition is also reasonable in drug-related matters. (*People v. Keller, supra*, 76 Cal.App.3d 827, 834-835, citing (*People v. Mason* (1971) 5 Cal.3d 759, 764 [97 Cal.Rptr. 302, 488 P.2d 630].) Although there was no specific evidence in this case of an alcohol problem, the court could reasonably infer that a juvenile experimenting with drug abuse might also engage in alcohol abuse.

Although appellant did not use a deadly weapon in the instant offense, he admitted to the probation officer the incident in which he went to his mother's house without permission, beat up Jerry P., and walked around with a broken glass bottle in a manner which threatened her boyfriend. A broken bottle is traditionally viewed as a deadly weapon.

Finally, the condition that appellant cooperate with the probation officer in a plan for psychiatric or psychological testing, counseling or treatment is supported by the record. It was recommended by the probation officer after a thorough review of appellant's unusual circum-

stances, including lifelong conflicts with his parents culminating in both parents rejecting him. Clearly psychological or psychiatric counseling could be of benefit to appellant and bears a reasonable relationship to the crime he committed and to preventing future criminality.

The order appealed from is affirmed.

Stephens, Acting P. J., and Hastings, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 25, 1981.