[No. E005643. Fourth Dist., Div. Two. Mar. 27, 1989.]

In re JIMI A., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JIMI A., Defendant and Appellant.

COUNSEL

Catherine Aragon, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Pat Zaharopoulos and Jay M. Bloom, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**HOLLENHORST, J.**—After a contested jurisdictional hearing, the juvenile court found true the allegations under count I, battery on an individual on school property (Pen. Code, § 243.2, subd. (a)), under count II with disruptive presence at a school (Pen. Code, § 626.8, subd. (a)), and in count III with disturbing the peace of a school campus (Pen. Code, § 415.5, subd. (a)). At the dispositional hearing, the minor was declared a ward of the court, granted probation, and placed in the custody of his mother.

FACTS

Barbara Pregmon, the principal of Kendall Elementary School, testified that on November 25, 1987, one of the teachers had an emergency and it was necessary for her to take over the teacher's class. At approximately 3:25 p.m. it was nearing time for dismissal and she lined the children up to escort

them to the gate so that they would be ready when the bell rang. At approximately that time she observed defendant pass through the gate onto the campus.[1] The campus had but one entrance which was through the gate. Parents were required to wait outside the gate to pick up their children after school. At the gate was a sign posted to the effect that unauthorized students could not come on campus during hours, after hours, or on nonschool days by order of the board of education.

Defendant brushed past the principal and she asked him to go back and wait at the gate which she knew he had done on previous occasions when he had come to pick up his brother. Defendant responded by telling her that he could do whatever he wanted as she had no power over him. It was at that time defendant began to scream vulgarities at the principal. Defendant told the principal "Leave me the fucking hell alone. Get away from me, you bitch." These remarks were made at least a dozen times. The principal called the police from her office and recontacted defendant. Defendant continued his verbal onslaught of profanity in front of several children. The principal requested defendant to accompany her to the office to wait for the police at which time defendant jumped the principal from behind and put a choke hold on her. The principal had her hand on the door and was thrown to the ground, hitting her head on the wall. Defendant had told the principal that he was at the school to pick up his brother.

Defendant testified on his own behalf. He confirmed that he went to the school to pick up his brother as he had done previously. Defendant stated that the previous year he had gone on campus a number of times to pick up his brother and was unaware of any signs forbidding him entry onto the campus. Defendant testified that he was unaware that Pregmon was the principal. Defendant testified he was willing to accompany the principal to the office after being told he would have to leave the campus. He further testified that it was the principal who lost control, became frantic, and started yelling. After the principal grabbed defendant's brother and started pushing and pulling on him, he grabbed the principal and held her by the neck in an attempt to stop her. Defendant admitted calling the principal a bitch because he was upset but denied any other profanity.

On appeal defendant claims: (1) under the clear meaning of the statute doctrine, defendant could not have been convicted for violation of Penal Code section 626.8, subdivision (a); (2); the evidence does not support a

---

[1] Defendant was apparently quite noticeable upon his entry onto the campus based upon his unique attire and unusual coiffure: orange, green and purple hair, combat boots, a black leather jacket and all kinds of paraphernalia. One is reminded of Dorothy's comment to her pet dog Toto, "Looks like we're not in Kansas anymore."

finding that defendant remained on the school campus after he was asked to leave; and (3) the trial court imposed improper conditions of probation.

## DISCUSSION

Penal Code section 626.8 reads in part as follows: "(a) Any person who comes into any school building or upon any school ground, or street, sidewalk, or public way adjacent thereto, without lawful business thereon, and whose presence or acts interfere with the peaceful conduct of the activities of the school or disrupt the school or its pupils or school activities . . . is guilty of a misdemeanor if he or she: [¶] (1) Remains there after being asked to leave by the chief administrative official of that school . . . ."

Penal Code section 626.8, subdivision (c)(2), defines lawful business as "a reason for being present upon school property which is not otherwise prohibited by statute, by ordinance, or by any regulation adopted pursuant to statute or ordinance." The People contend that defendant's continued presence on the campus after being told to leave by the principal violated Education Code section 32211. We agree. That section provides in part: "(b) Any person who fails to leave a public school building or public school grounds promptly upon the request of the principal of the public school or the designee of the principal made pursuant to subdivision (a) or who, after leaving a public school building or public school grounds pursuant to a request of the principal of the public school, or the designee of the principal, made pursuant to subdivision (a), returns thereto, except pursuant to subdivision (d), within 48 hours, is guilty of a misdemeanor and shall be punished pursuant to Section 626.8 of the Penal Code." We find that defendant's presence on the campus after being told to leave by the principal was without lawful business.

We find the meaning of the statute to be quite clear on its face. In the instant matter, defendant was asked to leave the school grounds by the principal after he had entered onto the campus. Defendant was given instruction as to where he was to wait and he chose not to follow those instructions. Instead of leaving promptly as the statute requires, he continued his presence in obnoxious fashion. It is also clear under the circumstances that defendant's business on the campus was to pick up his brother. School policy required defendant to wait at the gate until the students were dismissed.

Finally, defendant also argues that his conduct did not interfere with the peaceful conduct of the activities of the school or disrupt the school or its pupils or school activities. The evidence before the trial court is quite clear. Defendant cursed the principal, held her in a headlock, and

acted in a belligerent fashion when asked to leave the campus and wait outside. Indeed far less disruptive conduct was held violative of this statute in *In re Oscar R.* (1984) 161 Cal.App.3d 770 [207 Cal.Rptr. 789]. In that case, the court held: "Affirmative acts of disturbance are not required. It is sufficient if the minor's presence on school grounds interfered with the peaceful conduct of or disturbed school activities. The juvenile court found on the evidence that the minor's presence on the school campus was disruptive of the peaceful conduct of the activities of the school in that the security aide and the two deans who were patrolling the thirty-four acres of land, were required to leave their security posts unattended for an appreciable time to deal with the minor." (*Id.,* at p. 774.) In the instant matter, the principal was substituting for a teacher who was called away for an emergency. The evidence indicated that she had the school children lined up and ready to leave for the day when defendant began his verbal barrage of vulgar comments and ultimately placed the principal in a headlock. It is clear that the minor's presence on the school grounds interfered with the peaceful conduct of and disturbed school activities.

## TERMS OF PROBATION

At the dispositional hearing of this matter, the court imposed certain terms and conditions of probation. Included in those conditions were the provisions that defendant: (1) not have any dangerous or deadly weapon in his possession (condition number 9); (2) submit to the warrantless search of his person, car, and home, including his room, at the direction of the probation officer (condition number 12); and (3) submit to random drug testing (condition number 15). Defendant contends that these terms and conditions of probation were improper.

In our analysis of this issue we note that Welfare and Institutions Code section 730 provides in part: "The court may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." ■ Additionally, our Supreme Court has ruled: "A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' " (*People* v. *Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545].)

■ "Because of its rehabilitative function, the juvenile court has broad discretion when formulating conditions of probation. 'A condition of probation which is impermissible for an adult criminal defendant is not necessarily unreasonable for a juvenile receiving guidance and supervision from the

juvenile court.' [Citation.] '[I]n planning the conditions of the appellant's supervision, the juvenile court must consider not only the circumstances of the crime but also the minor's entire social history. . . .' " (*In re Frankie J.* (1988) 198 Cal.App.3d 1149, 1153 [244 Cal.Rptr. 254], quoting *In re Todd L.* (1980) 113 Cal.App.3d 14, 20 [169 Cal.Rptr. 625].)

■ In examining the circumstances of the instant matter, we find that the terms and conditions of probation are appropriate. With regard to the weapons term, we note the violence associated with this matter. While it is true that the instant matter did not involve a deadly weapon, we note the impulsive nature of the attack clearly suggests the minor lacks self-control. We believe under these circumstances it appropriate for the court to limit defendant's possession of weapons out of caution for public safety.

We likewise hold, given defendant's background of admitted substance abuse that the inclusion of drug terms including search terms was appropriate. The dialogue which occurred at the time of disposition indicated that the minor has *no parental supervision* during the late evening hours. The mother, the only adult in the home, works during the evening hours leaving the minor defendant home alone with his younger brother. This situation, coupled with the fact that the probation officer suspicioned that defendant was still involved with drugs and/or alcohol, were ample reason to include drug and search terms as part of the terms and conditions of probation.

DISPOSITION

Judgment affirmed.

Campbell, P. J., and Dabney, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 22, 1989.