[No. H008329. Sixth Dist. Apr. 6, 1992.]

In re BINH L., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
BINH L., Defendant and Appellant.

COUNSEL

Michael A. Kresser, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Stan M. Helfman and Morris Beatus, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BAMATTRE-MANOUKIAN, J.**—Binh L., a minor, was required by the terms of a preexisting juvenile probation order to submit to warrantless

search. A police officer, acting in apparent good faith but with neither probable cause nor knowledge of the preexisting probation search condition, searched the minor's person and found incriminating evidence. Should the evidence have been suppressed? We conclude that in the circumstances of record the answer is no. Our conclusion is consistent with that in *In re Marcellus L.* (1991) 229 Cal.App.3d 134 [279 Cal.Rptr. 901], but our analysis differs from that of *Marcellus L.* in some respects.

In November 1990 a juvenile court adjudged the minor a ward of the juvenile court, under Welfare and Institutions Code section 602, on the basis of the minor's admission that he had stolen one car and had had possession of a second stolen car. The court ordered the minor returned to his home on probation, upon the condition among others that he "submit to search & seizure anytime, day or night, with or without a warrant by any peace officer or school official."

In January 1991, in a second juvenile court proceeding under section 602, the minor admitted having taken another vehicle without the owner's permission. He was continued as a ward, on probation, with the notation that all prior orders would remain in effect.

In March 1991 a police officer with no knowledge of the minor's probation or of the search condition found the minor in an automobile in what the officer regarded as suspicious circumstances, concluded the minor was a truant, and in the course of a patdown of the minor's clothing for purposes of "officer safety" found a loaded pistol. A new section 602 petition was filed. The minor's motion to suppress all evidence collected by the police officer was denied. The minor then admitted certain of the allegations of the new petition and was continued as a ward, and in April 1991 he was committed to juvenile rehabilitation facilities.

The minor appeals from the April 1991 judgment, seeking review of the denial of his suppression motion. (Welf. & Inst. Code, §§ 800, 700.1.) He argues here, as he did in the juvenile court, that the police activity which led to discovery and seizure of the evidence against him was not justified by circumstances of which the officer was aware and could not be justified by the probation search condition of which the officer was unaware. Thus, he argues, the police activity violated his rights under the Fourth and Fourteenth Amendments to the federal Constitution.

The juvenile court rejected the minor's argument in its entirety, concluding that the search was based on probable cause and in any event was validated, in light of *Marcellus L.*, by the preexisting probation search condition.

In this court the People do not attempt to defend the juvenile court's finding of probable cause, electing instead to rely upon the probation search condition. Accordingly we shall not, and in light of our conclusion we need not, reach the question whether the search would have been constitutionally sound apart from the search condition.

The only evidence at the suppression hearing was the testimony of the police officer.

The officer recited that at 7:50 a.m. on March 7, 1991, while on patrol, he saw a car with a registration tag—the so-called "month tag" affixed to the rear license plate—which he could not read. He stopped the car and asked its driver for his license and the vehicle registration. The driver produced both license and registration; within three minutes after he stopped it the officer determined the car was legally registered.

Meanwhile the officer observed that there were 3 passengers in the car who appeared "pretty young," perhaps 14 to 15 years old. It was a school day, and the officer believed school would start at about 8:15 a.m. at Andrew Hill High School near where the officer had stopped the car. He believed the passengers "should be in school." Although the sequence of events is not clear, it appears the officer then ordered each of the three passengers out of the car separately, pat-searched the passenger, asked the passenger to state his name and the name of the school he attended, and then allowed the passenger to return to the car while he proceeded to the next passenger. The officer pat-searched the passengers primarily because they were wearing bulky coats, although he also had in mind reports of violence in the Vietnamese community of which the passengers appeared to be members. The officer found nothing incriminating in the course of this first patdown search.

One of the passengers was the minor appellant in this case. The minor gave the name of a high school some distance from the site of the automobile stop. None of the passengers named Andrew Hill High School; the officer did not know what time the school day began at either of the schools the passengers named.

The officer radioed the information he had obtained to his dispatcher, and in due course was advised that none of the three passengers was enrolled at the school he had named. Although it was not yet 8:15 a.m., the officer concluded that the passengers were truants and should be transported, in his patrol car, to a "truant abatement center." For this purpose he again ordered the passengers out of the car in which they had been riding and, for reasons

of "officer safety," patted them down again. On the minor's person the officer found the loaded pistol. The officer then handcuffed the minor and took him directly to police headquarters.

During these events the officer was unaware that the minor was on probation or that he was subject to a probation search condition.

■ "[T]he application of the Fourth Amendment depends on whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action. [Citations.]" (*Smith* v. *Maryland* (1979) 442 U.S. 735, 740 [61 L.Ed.2d 220, 226, 99 S.Ct. 2577].) This principle "posits a two-part inquiry: first, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?" (*California* v. *Ciraolo* (1986) 476 U.S. 207, 211 [90 L.Ed.2d 210, 215, 106 S.Ct. 1809].)

In this case the minor undeniably knew he was required to "submit to search & seizure anytime, day or night, with or without a warrant by any peace officer or school official": He signed, at the bottom of the written November 1990 probation order, an acknowledgment that "[t]he foregoing Order has been read by me or read to me and I fully accept it and understand its contents." We shall conclude that the probation search condition was valid, and that in the circumstances described in the officer's testimony any subjective expectation the minor might have had that the loaded pistol would not be subject to discovery by the officer was unreasonable.

The circumstances in which the minor in this case was made subject to a probation search condition must be distinguished from the situation in which an adult probationer assents to a probation search condition, and also from the situation in which a parole search condition is imposed upon a parolee.

■ Our Supreme Court has recently reaffirmed that an adult probationer can *waive* his or her privacy rights by agreeing to a probation search condition: "A probationer, unlike a parolee, consents to the waiver of his Fourth Amendment rights in exchange for the opportunity to avoid service of a state prison term. Probation is not a right, but a privilege. 'If the defendant considers the conditions of probation more harsh than the sentence the court would otherwise impose, he has the right to refuse probation and undergo the sentence. [Citations.]' [Citations.] A probationer's waiver of his Fourth Amendment rights is no less voluntary than the waiver of rights by a defendant who pleads guilty to gain the benefits of a plea bargain. [Citations.]" (*People* v. *Bravo* (1987) 43 Cal.3d 600, 608-609 [238 Cal.Rptr. 282,

738 P.2d 336].) Once an adult probationer has effectively waived his or her Fourth Amendment rights, he or she can complain of an official invasion of his or her privacy only if the search is conducted for purposes of harassment or for arbitrary or capricious reasons (*People* v. *Bravo, supra,* 43 Cal.3d at pp. 610-611; *People* v. *Mason* (1971) 5 Cal.3d 759, 765, fn. 3 [97 Cal.Rptr. 302, 488 P.2d 630], disapproved on an unrelated point in *People* v. *Lent* (1975) 15 Cal.3d 481, 486, fn. 1 [124 Cal.Rptr. 905, 541 P.2d 545]) or if the officials violate the knock-notice requirements of Penal Code sections 844 and 1531. (Cf. *People* v. *Lilienthal* (1978) 22 Cal.3d 891, 900 [150 Cal.Rptr. 910, 587 P.2d 706].) Short of these exceptions, the fact a searching officer proceeded without probable cause, or even in ignorance of the search condition (cf. *People* v. *Viers* (1991) 1 Cal.App.4th 990, 993 [2 Cal.Rptr.2d 667]), is rendered irrelevant by the adult probationer's voluntary waiver.

■ In contrast to an adult probationer, a parolee is given no opportunity to agree to a search condition: The condition is imposed automatically, as an invariable concomitant of parole, on every parolee. (Cf. Cal. Code Regs., tit. 15, § 2511, subd. (b) 4; Pen. Code, §§ 3052-3053; cf. *People* v. *Burgener* (1986) 41 Cal.3d 505, 531-532 [224 Cal.Rptr. 112, 714 P.2d 1251].) The interest in parole supervision of convicted, and formerly imprisoned, felons, to insure public safety, has been held sufficient to justify blanket nonconsensual imposition of parole search conditions. (*People* v. *Burgener, supra,* 41 Cal.3d at p. 532.) But a parolee retains a generalized expectation of privacy, albeit the expectation is in some measure diminished by the conditional nature of his or her freedom. (*Id.* at p. 534.) In implicit recognition of the potentially destructive impact of an automatic search condition upon even a diminished expectation of privacy, it has been held that searches may be justified by the parole search condition only where a reasonable suspicion of past or threatened activity in violation of parole, and that the search may turn up evidence of that activity, can be shown. (*Id.* at pp. 534-535.) Thus the parolee is required to anticipate that his or her privacy may be invaded on the basis of a reasonable suspicion short of probable cause.

■ Unlike an adult probationer, a minor cannot refuse probation (*In re Nathaniel Z.* (1986) 187 Cal.App.3d 1132, 1140 [232 Cal.Rptr. 378]; *In re Wayne J.* (1979) 97 Cal.App.3d 776, 780; [159 Cal.Rptr. 106] 1 Cal. Juvenile Court Practice (Cont.Ed.Bar 1981) § 9.52, p. 255) and therefore is in no position to refuse a particular condition of probation. The minor in this case did sign an acknowledgment that, among other things, he would "accept" the probation order. The acknowledgment makes clear that the minor was aware of the probation search condition, but neither the context nor the record as a whole suggests that his signature was intended to be, or could have been construed as, a voluntary and effective waiver of his privacy rights.

■ Unlike a parolee, a minor cannot be made subject to an automatic search condition. The statutory authority for juvenile probation conditions is Welfare and Institutions Code section 730, which provides in pertinent part that when a ward is placed under the supervision of the probation officer "[t]he court may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." It has been suggested that cases which fix the statutory boundaries of *adult* probation provisions are pertinent as well to juvenile probation orders (*In re Christopher W.* (1973) 29 Cal.App.3d 777, 783 [105 Cal.Rptr. 775], disapproved on another point in *In re William G.* (1985) 40 Cal.3d 550, 566 [221 Cal.Rptr. 118, 709 P.2d 1287]), and thus that "[a] probation condition 'will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . ." ' (*People v. Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545] . . . .)" (*In re Frank V.* (1991) 233 Cal.App.3d 1232, 1242 [285 Cal.Rptr. 16]; cf. *In re Christopher W., supra,* 29 Cal.App.3d 777, 783.) Indeed, the power of the juvenile court is even broader than that of a criminal court: "Because of its rehabilitative function, the juvenile court has broad discretion when formulating conditions of probation. 'A condition of probation which is impermissible for an adult criminal defendant is not necessarily unreasonable for a juvenile receiving guidance and supervision from the juvenile court.' [Citation.] '[I]n planning the conditions of appellant's supervision, the juvenile court must consider not only the circumstances of the crime but also the minor's entire social history. [Citations.]' [Citation.]" (*In re Frankie J.* (1988) 198 Cal.App.3d 1149, 1153 [244 Cal.Rptr. 254]; *In re Jimi A.* (1989) 209 Cal.App.3d 482, 487-488 [257 Cal.Rptr. 147]; *In re Todd L.* (1980) 113 Cal.App.3d 14, 19, 20 [169 Cal.Rptr. 625]; cf. *In re Frank V., supra,* 233 Cal.App.3d at p. 1242; *In re Laylah K.* (1991) 229 Cal.App.3d 1496, 1500 [281 Cal.Rptr. 6]; *In re Michael D.* (1989) 214 Cal.App.3d 1610, 1616 [264 Cal.Rptr. 476]; *In re Jose R.* (1982) 137 Cal.App.3d 269, 278-279 [186 Cal.Rptr. 898].) "Even conditions which infringe on constitutional rights may not be invalid if tailored specifically to meet the needs of the juvenile [citation]." (*In re Michael D., supra,* 214 Cal.App.3d 1610, 1616; cf. *In re Frank V., supra,* 233 Cal.App.3d at pp. 1242-1243; *In re Laylah K., supra,* 229 Cal.App.3d 1496, 1502; cf. also *Planned Parenthood of Missouri v. Danforth* (1976) 428 U.S. 52, 74-75 [49 L.Ed.2d 788, 807-808, 96 S.Ct. 2831]; *In re Roger S.* (1977) 19 Cal.3d 921, 928 [141 Cal.Rptr. 298, 569 P.2d 1286].) But every juvenile probation condition must be made to fit the circumstances and the minor.

Under these principles California appellate courts have expressly upheld probation search conditions in particular juvenile court cases. (Cf., e.g., *In re*

*Michael D., supra,* 214 Cal.App.3d 1610, 1617; *In re Jimi A., supra,* 209 Cal.App.3d 482, 488; *In re Todd L., supra,* 113 Cal.App.3d 14, 20.) Broadly the purpose of the juvenile court law is to provide for the protection and safety of the public as well as of the minor. (Welf. & Inst. Code, § 202, subds. (a), (b).) ▇▇▇ Here the minor had acknowledged his involvement in automobile theft, an activity that rationally connotes possession of tools to enter and operate locked automobiles, possession of small articles taken from such automobiles, and other forms of larcenous behavior. A probation search condition was rational both to assure that the minor would correct his behavior and in this sense be rehabilitated, and to protect the public against the possibility he would not. The need for such assurance, and for such protection, was reinforced two months after the probation order was made, when the minor acknowledged taking another motor vehicle. At least in terms of the statutory provisions of the juvenile court law, the November 1990 probation search condition was warranted and proper.

It goes without saying that, aside from its statutory propriety, the probation search condition effected, in and of itself, an encroachment on the minor's constitutional privacy rights. In the circumstances of record here the encroachment was warranted, and the search condition constitutionally valid, in light of two considerations.

▇▇▇▇ First, it has been recognized that, in general, even adult parolees and probationers " 'have a reduced expectation of privacy, thereby rendering certain intrusions by governmental authorities "reasonable" which otherwise would be invalid under traditional constitutional concepts, at least to the extent that such intrusions are necessitated by legitimate governmental demands.' " (*People* v. *Burgener, supra,* 41 Cal.3d 505, 531, quoting from *People* v. *Mason, supra,* 5 Cal.3d 759, 764-765; cf. *In re Martinez* (1970) 1 Cal.3d 641, 647, fn. 6 [83 Cal.Rptr. 382, 463 P.2d 734].) To determine how much of a reduction is constitutionally permissible, it is both necessary and proper to balance the individual's privacy rights, on one hand, against the interests of society in both the individual's rehabilitation and its own protection, on the other. (*People* v. *Burgener, supra,* 41 Cal.3d at p. 531.)

▇▇▇▇ Second, although "[m]inors, as well as adults, are protected by the Constitution and possess constitutional rights," the U.S. Supreme Court "long has recognized that the State has somewhat broader authority to regulate the activities of children than of adults." (*Planned Parenthood of Missouri* v. *Danforth, supra,* 428 U.S. 52, 74-75 [49 L.Ed.2d at pp. 807-808]; cf. *In re Roger S., supra,* 19 Cal.3d 921, 927-928.) Whether or not this generalization should be applied to Fourth Amendment rights in the situation of a minor who has not previously been adjudged to have violated criminal

laws (cf. *In re Scott K.* (1979) 24 Cal.3d 395, 402 [155 Cal.Rptr. 671, 595 P.2d 105]), in the circumstances of the case before us the generalization lends weight to our conclusion that the November 1990 probation search condition could constitutionally be applied to a minor who had acknowledged his involvement with stolen automobiles.

 Thus, we conclude, the probation search condition was both statutorily and constitutionally valid. Because the search condition was tailored for and expressly made known to and individually imposed upon the minor, the search condition must be deemed to have had an impact on the minor's reasonable expectation of privacy far more direct than that of a parole condition automatically imposed on every parolee. The minor knew, by a direct and valid order of the juvenile court, that he was subject to warrantless search at any time or place by any probation or police officer. And if he associated the likelihood of warrantless search with any particular circumstances, surely it would be with his presence in or use of a motor vehicle, inasmuch as all of his difficulties with the law appear to have involved unlawful taking of motor vehicles.

In short, if there were any circumstance in which the minor could reasonably have expected his decision to carry a loaded pistol to remain private from the police, this was certainly not such a circumstance: Riding in a car only four months after he had acknowledged a probation search condition in an order arising out of admitted vehicle thefts.

In this court the minor chooses to dwell not on what his reasonable expectations might have been but rather on the arguable impropriety of the officer's conduct. His argument appears to be that the evidence should be suppressed to punish the officer's conduct. The argument depends on a flawed premise. The exclusionary rule seeks to penalize past misconduct and thus to deter future misconduct, but the misconduct to which the rule is addressed is not police misconduct in general but rather, specifically, conduct which violates a defendant's Fourth Amendment rights. If there has been no violation of the defendant's Fourth Amendment rights there is no occasion for application of the exclusionary rule. The question whether there has been a Fourth Amendment violation is to be answered from the defendant's perspective: Did the police (or other state) activity in question violate the defendant's reasonable expectation of privacy?

Past cases have sometimes sought to minimize the distinction between police conduct and a defendant's reasonable expectations by suggesting, in essence, that a defendant may reasonably expect a police officer to act properly. In some cases this approach may be analytically satisfactory. But

the case before us is of a special type: There is no showing that the officer would have conducted himself differently had he been aware of the probation search condition. The minor's assertion that the officer's conduct was improper is directed not to the conduct itself but to the question whether, as he engaged in the conduct, the officer was aware of the probation search condition. There is no showing that the minor knew or supposed that the officer did not know of the search condition. The minor could not reasonably have expected an officer who found him in a car and who knew of his probation search condition not to search him; in practical terms there was no more violation of the minor's reasonable expectation of privacy in this case than there would have been had the officer been fully aware of the probation search condition. We respectfully suggest that the minor's concern with the officer's conduct, rather than with his own reasonable expectations, focuses too much on the problematic proposition that the exclusionary rule can reform improper police conduct, and not enough on the essential question whether there was a Fourth Amendment violation in the first place.

As we have noted, even in the case of an adult probationer who can be said to have waived his or her Fourth Amendment rights the waiver will not extend to police conduct which can be said to have been arbitrary or capricious, or to have amounted to harassment of the defendant. The minor's final argument is that even if the probation search condition is applicable the officer must be found to have engaged in arbitrary, capricious, and harassing activity sufficient to invoke the exclusionary rule. The minor points particularly to the facts that the officer prolonged the detention after he had received confirmation of the vehicle's registration and that he subjected the youths to two pat searches neither of which (in the minor's view) was warranted by the circumstances.

This is not the waiver situation in which the harassment exception was developed, essentially as a rational limitation on the scope of the waiver. Here the question is whether the manner in which the officer conducted himself was so gross as to invade any residual expectation of privacy the minor might have had in light of his knowledge of the search condition and in the circumstances of record. The question is arguably subject to our independent review. (Cf. *People* v. *Williams* (1988) 45 Cal.3d 1268, 1301 [248 Cal.Rptr. 834, 756 P.2d 221].)

We will not set aside the juvenile court's implicit finding. While we are inclined to agree with the People's apparent concession that the officer lacked probable cause, we find no clear evidence that the officer did not believe the theory of potential truancy he outlined at the suppression hearing, or that by his own standards he proceeded in anything less than good faith or by anything less than reasonable measures.

We will not be the judges of other facts in other cases, but in the record before us we perceive no violation of the Fourth Amendment, or any other basis for invocation of the exclusionary rule. The minor's motion to suppress the evidence was properly denied.

The judgment of the juvenile court is affirmed.

Elia, Acting P. J., and Agliano, J.,* concurred.

A petition for a rehearing was denied April 29, 1992, and appellant's petition for review by the Supreme Court was denied June 25, 1992. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.

---

*Retired Presiding Justice of the Court of Appeal, Sixth District, sitting under assignment by the Chairperson of the Judicial Council.