Filed 12/5/14  In re Joshua M. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re JOSHUA M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSHUA M.,<br><br>    Defendant and Appellant. | A140934<br><br>(Alameda County<br>Super. Ct. No. SJ13020286A) |

Joshua M. (Joshua) appeals from a disposition order that imposed "gang conditions" as a term of his probation.  He contends the gang conditions must be stricken because neither he nor his family had ties to a criminal street gang.  We will affirm the order.

## I.  FACTS AND PROCEDURAL HISTORY

A petition under Welfare and Institutions Code section 602 alleged that Joshua, age 15, committed felony robbery and received stolen property.  (Pen. Code, §§ 211, 496.)[1]

According to the probation intake report, Joshua had pulled a 67-year-old woman off her bicycle, removed her iPhone and keys from her pocket, and fled.

---

[1]    All statutory references are to the Penal Code unless otherwise designated.

1

Later that day, he struck a young woman in the face, grabbed her iPhone from her hand, and fled. Within minutes he was apprehended by police, who found a stolen iPhone on his person. At an in-field show-up, the young victim identified Joshua as the person who struck her and took her property; the elder victim did not identify him but said his gray hoodie was similar to the clothing worn by her assailant.

The juvenile court granted the district attorney's request to reduce the felony robbery count to felony grand theft from a person (§ 487, subd. (c)), and Joshua admitted this count in exchange for a dismissal of the other count.

At the disposition hearing in February 2013, the court adjudged Joshua a ward of the court, removed him from his mother's custody, and ordered his placement in a suitable foster home, private institution, group home or county facility.

In March 2013, the juvenile court granted Joshua's motion for reconsideration, vacated the disposition order, and scheduled a rehearing on the disposition. At the rehearing in April 2013, the court reinstated the original disposition. In August 2013, we affirmed the judgment, including the disposition order.

Joshua was placed at Rite of Passage—Sierra Ridge Academy (ROP) in April 2013. The October 2013 exit report from ROP noted that he successfully completed the program and displayed "positive" and "exemplary behavior." He was "soft spoken and respectful," did not "seem to show any aggressive behaviors," and was "very polite," "quick to take initiative," hardworking, and "very considerate of others." He also denied affiliation with any gang. The report further advised, however, that Joshua minimized his crimes, questioned why he was placed at ROP, had a moderate risk of re-offending within a year, and experienced a moderate risk arising from his relationships. In addition, in a section of the report entitled "Long-Term Behavioral Goals," under the category of "Behavioral Problem[s]," the report advised that Joshua's "[a]nti-social values support *frequent criminal activity with anti-social friends and acquaintances*" and he made "favorable comparisons regarding anti-social behavior (e.g., Robin Hood)." (Italics added.)

The probation department's Modification Report, filed on January 16, 2014, noted Joshua's completion of the ROP program without incident. The probation department therefore recommended that the placement order be modified to allow Joshua to live with his mother under standard conditions of probation. Among the proposed conditions was that he not be a member of, or associate with a person he reasonably should know is a member of, a criminal street gang, along with related terms pertaining to gang symbols, tattoos and gang-related piercings.

In January 2014, the juvenile court continued Joshua as a ward of the court but placed him on formal home probation, as recommended, with modified terms and conditions. As the court began to impose conditions relating to criminal street gangs, the following colloquy ensued: "THE COURT: I'm also going to put in place the gang conditions. [¶] You're not to be a member of or associate with any person that you know or should reasonably know to be a member of or involved in the activities of a criminal street gang. [¶] [DEFENSE COUNSEL]: And, Your Honor, before you continue I just wanted to object to the gang conditions for the record. [¶] I did review the original disposition report, and gang conditions were not recommended. I also don't recall anything in regards to the circumstances of the offense that would indicate that the event was gang related. And certainly nothing that happened at his placement indicated that he's involved in gangs. He did do a very good job in the placement program. So I would object to the gang conditions. [¶] THE COURT: The Court is noting the objection. [¶] I'm going to put that in place as a specific request that's made by the Probation Officer based on the information in the entire court files. [¶] You are not to wear or display any items or emblems reasonably known to be associated with or symbolic of gang membership. [¶] And you're not to acquire . . . any new tattoos or gang-related piercings. And you're to have any existing tattoos or piercings photographed if you're directed to do so by your Probation Officer."

This appeal followed.

## II. DISCUSSION

Under Welfare and Institutions Code section 730, subdivision (b), the juvenile court may impose "any and all reasonable [probation] conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." " 'A condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, *and* (3) requires or forbids conduct which is not reasonably related to future criminality." ' " (*In re R.V.* (2009) 171 Cal.App.4th 239, 246 (*R.V.*), quoting *People v. Lent* (1975) 15 Cal.3d 481, 486 (*Lent*), italics added.) This *Lent* test applies to juvenile court disposition orders, and we review the court's imposition of probation conditions for an abuse of discretion. (*In re Josh W.* (1997) 55 Cal.App.4th 1, 5-6.)[2]

As mentioned, the juvenile court imposed the following gang conditions: "You're not to be a member of or associate with any person that you know or should reasonably know to be a member of or involved in the activities of a criminal street gang. [¶] . . . [¶] You are not to wear or display any items or emblems reasonably known to be associated with or symbolic of gang membership. [¶] And you're not to acquire . . . any new tattoos or gang-related piercings. And you're to have any existing tattoos or piercings photographed if you're directed to do so by your Probation Officer."

The record supports the imposition of these gang conditions. At the disposition hearing, the court explained that the gang conditions were imposed pursuant to the probation officer's request based on Joshua's entire record. The record of the minor's social history is a necessary and proper consideration for the court in deciding which probation conditions to impose. (*In re Juan G.* (2003) 112 Cal.App.4th 1, 6-7; *In re*

---

[2]    Accord *People v. Olquin* (2008) 45 Cal.4th 375, 384 [if probation condition limits constitutional rights, condition must be closely tailored to purpose of the condition].) Joshua does not contend any standard other than abuse of discretion applies. Under either standard, we would uphold the gang conditions imposed here.

*Todd L.* (1980) 113 Cal.App.3d 14, 20.) Included in Joshua's record was the ROP exit report, which noted that Joshua minimized his crimes and made "favorable comparisons regarding anti-social behavior (e.g., Robin Hood)," and his "[a]nti-social values support *frequent criminal activity with anti-social friends and acquaintances*." (Italics added.) Although the ROP report did not assert that Joshua had already participated in gang activity or expressly state that he was particularly vulnerable to their influence, the juvenile court did not have to wait until Joshua developed gang ties to preclude him from doing so. The concerns expressed in the ROP report indicate the rehabilitative purpose of the gang conditions, which were reasonably imposed to help preserve the excellent progress Joshua had otherwise made in the ROP program.

More specifically, the gang conditions are valid under *Lent*. As to the second *Lent* factor, the gang conditions are valid because they relate to conduct that is criminal, to the extent they preclude membership in a criminal street gang. Indeed, Joshua does not challenge this portion of the probation condition. Moreover, with respect to the third *Lent* factor, all of the gang conditions forbid conduct that is reasonably related to future criminality: associating with gang members, displaying gang colors or emblems, and acquiring gang-related piercings or tattoos all reflect (or risk) involvement in the criminal conduct of criminal street gangs.

Joshua relies on *People v. Brandão* (2012) 210 Cal.App.4th 568, which ruled that the imposition of a no-gang-contact condition constituted an abuse of discretion in that case because the record divulged "(1) no ties between defendant and any criminal street gang, (2) no such ties involving any member of defendant's family, and (3) no criminal history showing or strongly suggesting a gang tie." (*Id*. at p. 576.) He further notes that his criminal history consists of only one unadjudicated petty theft and the current theft charges, and there is no indication that these crimes had a connection to criminal street gangs. However, *Brandão* concerned an adult defendant. Joshua is a minor, and juvenile courts have greater leeway to impose conditions aimed at a minor's rehabilitation. (*In re Todd L.*, *supra*, 113 Cal.App.3d at p. 19 [a probation condition that is impermissible for an

adult defendant is not necessarily unreasonable for a juvenile defendant]; *In re Frankie J.* (1988) 198 Cal.App.3d 1149, 1153 [because of its rehabilitative function, the juvenile court has broad discretion to impose probation conditions that may not be imposed on adults].)  Here, the gang conditions bear a reasonable nexus to the rehabilitation of Joshua and preventing future criminality.

Joshua also contends that, because his placement at ROP was contrary to the probation department's original recommendation and his attorney's argument, his protest that he should not have been placed in ROP was reasonable and does not justify the imposition of gang conditions.  However, the gang conditions were not imposed solely due to his protests against his placement, but because he minimized his crimes, he made favorable comparisons regarding antisocial behavior, and his antisocial values would make him vulnerable to future criminal activity with antisocial friends and acquaintances.

Joshua fails to establish error.

### III.  DISPOSITION

The order is affirmed.

NEEDHAM, J.

We concur.

SIMONS, Act. P. J.

BRUINIERS, J.

6