Filed 7/28/15  In re L.M. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re L.M., a Person Coming Under the Juvenile Court Law. | H041893 (Santa Cruz County Super. Ct. No. DP002808) |
| SANTA CRUZ COUNTY HUMAN SERVICES DEPARTMENT, Plaintiff and Respondent, v. T.M., Defendant and Appellant. | |

The Santa Cruz County Human Services Department (Department) filed a juvenile dependency petition on behalf of L.M. (minor), an infant.  Minor's mother (mother) relinquished her parental rights.  Minor's father, T.M. (father), appeals from an order terminating his parental rights.  Father contends the juvenile court erred in failing to apply the beneficial parental relationship exception to adoption.  We disagree and affirm the juvenile court's order.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     *The Dependency Petition and Detention Hearing*

On September 27, 2013, the Department filed a dependency petition under Welfare and Institutions Code section 300, subdivisions (b) and (j) on behalf of minor,

who was four months old at the time.[1]

At the time the petition was filed, mother was living at a residential drug treatment center with minor and father was homeless. The petition alleged that mother and father had failed to protect minor. (§ 300, subd. (b).) As to that ground, the petition alleged mother and father had a history of domestic violence, including several physical altercations in minor's presence. The petition further alleged mother had a history of abusing marijuana, criminal activity, and abusing and neglecting a daughter (daughter) born in 1999. The petition alleged father had a history of mental instability and abusing marijuana. As a second statutory ground, the petition alleged minor's sibling had been abused or neglected (§ 300, subd. (j)). Specifically, the petition alleged that daughter had twice been removed from mother's custody before mother relinquished her parental rights.

The juvenile court held a detention hearing on September 30 and October 1, 2013. At that hearing, a safety plan signed by mother and father was submitted to the court. The court placed minor with mother at the residential drug treatment center on the condition that mother and father comply with the safety plan. Among other things, the safety plan required mother and father to obtain substance abuse treatment and to stay away from one another. It also prohibited mother from leaving the residential treatment center with minor.

### B. *The Jurisdiction and Disposition Report and Hearing*

The jurisdiction and disposition report summarized mother and father's history of domestic abuse, noting that each had physically hurt the other and that there was "no identified victim and perpetrator." While mother "acknowledge[d] some level of dysfunction in her relationship with" father, she did not take responsibility for her actions. Meanwhile, father denied they had any problems, presenting with what the

---

[1] Unspecified statutory references are to the Welfare and Institutions Code.

2

Department called "a total lack of insight." The Department reported it was concerned about future domestic violence in light of mother and father's plans to reunite and marry, as well as their failure to address their dysfunction. Accordingly, the Department recommended minor be detained and reunification services be offered to mother and father.

With respect to father's court ordered supervised visitation with minor, the report noted that father's visits initially were "sporadic." He was "doing fine" during his visits "with a lot of coaching" and was "very enthusiastic about caring for" minor.

The report indicated that father's parents, who lived in Pennsylvania, were interested in having minor placed in their home.

At the jurisdiction and disposition hearing on November 19, 2013, father requested a contested hearing. Both parents submitted as to jurisdiction and, on December 13, 2013, the court sustained the petition. The court then held a contested hearing at which mother, father, and a social worker testified. The court ordered minor removed from mother's custody, granted reunification services to mother and father, and ordered monitored visitation.

### C. *The Six-Month Review Report and Hearing*

In its six-month review report, dated June 10, 2014, the Department reported that mother and father were living together and were employed, but that their employment caused them to miss appointments with service providers and visitations with minor. According to the report, father had attended three sessions with a therapist but had missed two therapy sessions. In April 2014, the therapist informed the social worker she did not believe it was safe for minor to be in father's care. Father had attended four of eight domestic violence classes, had failed to set up parenting classes, and had missed 13 of 33 visitation sessions with minor. The Department noted that father had requested to reschedule three visitation sessions due to his work schedule, but no other times were available. During a supervised trip to the Monterey Bay Aquarium for minor's first

3

birthday, father placed minor on the ledge of a fish tank to take her picture. Mother grabbed minor before she fell. When asked about the incident, mother told the social worker she could never leave minor alone with father.

The report indicated that minor's paternal grandparents visited from Pennsylvania in May 2014 to celebrate minor's first birthday. They met minor for the first time during that visit. While the social worker directed them to maintain contact with minor's foster parents to establish a relationship with minor, they failed to do so.

The Department recommended that reunification services be terminated and a section 366.26 hearing be set to determine a plan of adoption for minor.

On August 13, 2014, the juvenile court held a contested six-month review hearing. Following the hearing, the court terminated reunification services to each parent and set the matter for a section 366.26 hearing.

### D. The Section 366.26 Report and Father's Section 388 Petition

In the section 366.26 report, dated November 18, 2014, the Department reported that mother had relinquished her parental rights. It further reported that the paternal grandparents had been in regular phone contact with minor's foster parents for several months and had supervised visits with minor in August and October. The Department reported having "several concerns regarding the paternal grandparents, including their delay in follow-up contact with the Department, scheduling visits with their granddaughter, delay in regular phone contact with the foster parents and failure to understand the importance of all of the above tasks for the purpose of establishing a relationship with their granddaughter and putting her needs before their own." Accordingly, the Department recommended that minor remain in her current placement with her foster parents, with whom she had "developed a healthy parent/child relationship and attachment." The Department further recommended that the court terminate father's parental rights and establish a permanent plan of adoption for minor.

4

On January 5, 2015, father filed a section 388 petition requesting that minor be placed with her paternal grandparents.

### E. *Hearing on Father's Section 388 Petition and Contested Section 366.26 Hearing*

The court heard testimony and argument on father's section 388 petition on January 7, 2015. The court denied the petition on the ground the request was not in the best interest of minor.

On January 29, 2015, the court held a contested section 366.26 hearing. After hearing argument, the court found minor to be generally adoptable based on her age and other characteristics, as well as specifically adoptable because her foster parents wished to adopt her. The court concluded the beneficial parental relationship exception did not apply and terminated father's parental rights.

Father timely appealed the denial of his section 388 petition and the termination of his parental rights.

## II. DISCUSSION

As an initial matter, we note that only the order terminating father's parental rights is properly before us on appeal. While father timely appealed the denial of his section 388 petition, his appellate briefs contain no substantive argument regarding that order and request only the reversal of the order terminating his parental rights. Accordingly, we consider the appeal of the order denying father's section 388 petition abandoned. (*Mangano v. Verity, Inc.* (2009) 179 Cal.App.4th 217, 222, fn. 6 [contention unsupported by "substantive argument or citation to authority" deemed abandoned]; *Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1117 ["the failure of appellant to advance any pertinent or intelligible legal argument . . . constitute[s] an abandonment of the appeal"].)

### A. *Governing Legal Principles*

"The purpose of the section 366.26 hearing is to select a permanent plan for the child after reunification efforts have failed or been refused." (*In re I.R.* (2014) 226

5

Cal.App.4th 201, 210.) "The alternatives available to the juvenile court at the section 366.26 hearing are limited to those set forth in the statute" (*ibid*.), and "the statutory preference is to terminate parental rights and order the child placed for adoption." (*In re C.B.* (2010) 190 Cal.App.4th 102, 121; § 366.26, subd. (b)(1).) "Adoption is the Legislature's first choice because it gives the child the best chance at such a commitment from a responsible caretaker." (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1348.)

"Adoption must be selected as the permanent plan for an adoptable child and parental rights [must be] terminated unless" certain exceptions apply. (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314 (*Bailey J.*); § 366.26, subd. (c)(1).) One such exception--the beneficial parental relationship exception--applies where the court finds "a compelling reason for determining that termination [of parental rights] would be detrimental to the child" (§ 366.26, subd. (c)(1)(B)) because "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (*Id*., subd. (c)(1)(B)(i).) "[T]he proponent of the exception bears the burden of producing evidence of the existence of a beneficial parental . . . relationship." (*Bailey J.*, *supra*, at p. 1314.)

For purposes of the beneficial parental relationship exception, a child would benefit from continuing the parent-child relationship where " 'the relationship promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents.' " (*In re C.B.*, *supra*, 190 Cal.App.4th at p. 124.) Thus, in determining whether the exception applies, "[t]he juvenile court 'balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer.' " (*Ibid*.) " 'The exception must be examined on a case-by-case basis, taking into account the many variables which affect a parent/child bond,' " including " '[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or

6

"negative" effect of interaction between parent and child, and the child's particular needs.' " (*Ibid*.)

### B. *Standard of Review*

We apply a hybrid standard of review to the juvenile court's determination that the beneficial parent-child relationship exception did not apply. We review factual findings, including whether a beneficial parental relationship exists, for substantial evidence. (*In re C.B.*, *supra*, 190 Cal.App.4th at p. 123; *Bailey J.*, *supra*, 189 Cal.App.4th at p. 1314.) Where the juvenile court concludes the parent did not carry their burden to establish the existence of a beneficial parental relationship, the question for us is whether "the undisputed facts established the existence of a beneficial parental . . . relationship." (*Bailey J.*, *supra*, at p. 1314; *In re I.W.* (2009) 180 Cal.App.4th 1517, 1529.) We review whether the relationship constitutes a compelling reason for determining that termination of parental rights would be detrimental to the child for an abuse of discretion. (*Bailey J.*, *supra*, at p. 1315.)

On reply, father urges us to repudiate the hybrid standard of review first articulated in *Bailey J.*, saying it "sets a virtually impossible to surmount hurdle." His argument appears to be that *Bailey J.* improperly requires a parent invoking the beneficial parental relationship exception to show not only that (1) he or she has maintained regular visitation and (2) the child would benefit from continuing the relationship, but also (3) a compelling reason termination would be detrimental to the child. In his view, only the first two showings are required, and if they are made the requisite compelling reason exists.

The standard of review enunciated in *Bailey J.* is consistent with the statutory language. Section 366.26, subdivision (c)(1)(B) mandates that a court terminate parental rights unless it "*finds* a compelling reason for determining that termination would be detrimental to the child." (Italics added.) From the plain language of the statute, it is clear the Legislature intended to give courts discretion to determine whether the

7

exceptions listed in section 366.26, subdivision (c)(1)(B)(i)-(iv), including the beneficial parent-child exception, constitute a "compelling reason for determining that termination would be detrimental to the child." (§ 366.26, subd. (c)(1)(B).) Thus, as this court explained in *Bailey J.*, courts must "determine the *importance* of the relationship in terms of the detrimental impact that its severance can be expected to have on the child and to weigh that against the benefit to the child of adoption." (*Bailey J.*, *supra*, 189 Cal.App.4th at p. 1315.) We decline to revisit the standard of review. In any event, father's objection to *Bailey J.* is not implicated here because, finding undisputed facts do not establish the existence of a beneficial parental relationship, we do not reach the question whether any such relationship constitutes a compelling reason for determining that termination would be detrimental.

### C. The Juvenile Court Did Not Err in Refusing to Apply the Beneficial Parental Relationship Exception

Here, the juvenile court failed to find a beneficial parental relationship, stating it could not find that the value of father's relationship with minor "outweighs the security, stability, permanency and belonging that adoption would provide." Thus, father must show that "undisputed facts established the existence of a beneficial parental . . . relationship." (*Bailey J.*, *supra*, 189 Cal.App.4th at p. 1314.) He cannot make that showing.

Minor was in father's custody for just the first four months of her life. At the time of the section 366.26 hearing on January 29, 2015, she was 19 months old and had been living with her foster parents for 11 months. Record evidence shows father was unable to fill a parental role for minor. For example, when she was a one-year-old, father placed minor unattended on the edge of a fish tank. Both mother and a therapist expressed the view that minor was unsafe in father's care.

Father points to evidence that minor called him "dada," shared his love of music, and was comfortable and happy when she was with him. He also relies on evidence that,

during visits, he changed her diapers, fed her, read to her, and played with her. But evidence of " 'frequent and loving contact, an emotional bond with the child, or pleasant visits' " is not sufficient " '[t]o meet the burden of proving the section 366.26, subdivision (c)(1)(B)(i) exception.' " (*In re C.B.*, *supra*, 190 Cal.App.4th at p. 126; *Bailey J.*, *supra*, 189 Cal.App.4th at p. 1316 ["frequent and loving contact was insufficient to show the requisite beneficial parental relationship"].) Visitation logs and the section 366.26 report stated minor had no difficulty separating from father at the end of their visits, but rather was happy to see her foster parents, suggesting the strength the father's parental relationship did not outweigh the benefits of adoption. (*Bailey J.*, *supra*, at p. 1316 [undisputed evidence did not establish that the mother had a beneficial parental relationship with child where there was no evidence child had difficulty separating at the end of visits].)

Father's reliance on *In re S.B.* (2008) 164 Cal.App.4th 289, in which the court concluded the juvenile court erred in declining to apply the beneficial parent-child relationship exception, is misplaced. In *S.B.*, the appellant father had been the five-year-old minor's primary caretaker for three years, she displayed a strong attachment to him, and he had " 'complied with every aspect of his case plan.' " (*Id.* at p. 293.) By contrast, here, father was never minor's primary caretaker, minor had been out of father's custody for most of her life, and minor did not have difficulty separating from father. In addition, father initially missed a significant number of visits with minor and did not take advantage of the resources offered him, including therapy, parenting classes, and domestic violence classes.

For the foregoing reasons, we conclude undisputed evidence did not establish that father had a beneficial parental relationship with minor.

III.    DISPOSITION

The order terminating father's parental rights is affirmed.

9

_____

                                Walsh, J.*

WE CONCUR:


_____

        Rushing, P. J.


_____

        Elia, J.


In re L.M.
H041893

_____

    * Judge of the Santa Clara County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.