Filed 10/7/21  P. v. Escapita CA1/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>DAISY ESCAPITA,<br><br>      Defendant and Appellant. | A161303<br><br>(Napa County<br>Super. Ct. No.<br>18CR004040/20CR000150)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT]** |

**BY THE COURT:**

It is ordered that the opinion filed herein on September 29, 2021, be modified as follows:

On page 23, the first two full paragraphs are modified to read:

"When Escapita was sentenced, section 1203a provided that a trial court may grant misdemeanor probation 'for a period not to exceed three years.'  (Former § 1203a.)  The trial court here granted probation for three years."

"Effective January 1, 2021, Assembly Bill No. 1950 (AB 1950) (2019–2020 Reg. Sess.) amended section 1203a to limit the probation term for misdemeanor offenses to one year.  (Stats. 2020, ch. 328, § 1; § 1203a, subd. (a).)"

1

These modifications do not effect a change of the judgment.

The petition for rehearing is denied.

Dated: _October 7, 2021____    _____Richman, Acting P.J.

Filed 9/29/21  P. v. Escapita CA1/2 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>DAISY ESCAPITA,<br><br>　　　　Defendant and Appellant. | A161303<br><br>(Napa County<br>Super. Ct. No.<br>18CR004040/20CR000150) |

Defendant Daisy Escapita appeals from judgments in two cases after pleading no contest to grand theft of personal property (Pen. Code,[1] § 487), resisting arrest (§ 148, subd. (a)(1)), and failing to appear in court as ordered (§§ 1320, subd. (b), 1320.5).  The trial court granted Escapita three years' probation, imposed numerous probation conditions, and ordered her to pay fines and fees.  On appeal, Escapita contends (1) the trial court abused its discretion in imposing probation conditions prohibiting her from possessing weapons and marijuana; (2) the weapons condition also was unconstitutionally overbroad; (3) other conditions requiring her to enroll in and complete substance abuse and mental health assessments or treatment

---

[1] Further undesignated statutory references are to the Penal Code.

1

programs were impermissible delegations of judicial authority to the probation department; (4) her probation term must be reduced to two years pursuant to recently enacted Assembly Bill No. 1950; and (5) she is entitled to remand so that the court may hold a hearing and determine her ability to pay the fines and fees imposed.

We conclude Escapita's first and second arguments lack merit but that her third and fourth arguments are well taken. We therefore reverse the judgments and remand with directions to strike and reconsider the probation conditions requiring enrollment in assessments and treatment programs, and to modify Escapita's term of probation in accordance with Assembly Bill No. 1950. As for Escapita's fifth argument, because we are remanding for resentencing, we also direct the trial court to entertain any inability-to-pay objection Escapita may have before imposing fines and fees. In all other regards, we will affirm the judgments.

## BACKGROUND

In 2018 and 2020, the Napa County District Attorney filed criminal complaints against Escapita in two separate cases: No. 18CR004040 and No. 20CR000150.

The probation report summarizes the facts pertaining to the first case as follows.[2] "[O]n December 19, 2018, at approximately 2103 hours, deputies were dispatched to Walmart in the city of American Canyon for a reported theft. The responsible female, identified as the defendant, Daisy Escapita, had walked out of the store with a cart full of merchandise before loading it

---

[2] The probation officer filed a combined pre-sentence report for both cases. At the plea hearing, the parties stipulated to the police report and court record as the factual basis for the pleas in both cases. The facts of the offenses are taken from the police reports issued in each case, as quoted in the probation report.

in the back of her vehicle. Dispatch provided deputies a description of the defendant and her vehicle.

"Upon arrival, Deputy Goddard contacted the defendant who was hastily loading merchandise into the back of her vehicle. She was advised she was being detained. When Deputy Goddard attempted to handcuff the defendant, she became rigid and started to twist. Deputies Goddard and Olson secured the defendant [and] merchandise in the back of her vehicle and handcuffed her."

"Walmart employees identified and retrieved the items that belonged to them. A receipt of the stolen items revealed the items were worth approximately $1,322.17.

"Under *Miranda* warning, the defendant stated she stole the items because she has kids and, 'it is hard times right now.'

"While the employees were gathering their merchandise, the defendant had slipped her handcuffs from the rear to the front. The deputies had the defendant stand to reposition the handcuffs where she began to twist and pull away. Deputy Olson informed her she was going to jail and they escorted her outside to the patrol vehicle. The defendant was continuously twisting and pulling away while dragging her feet and yelling obscenities, some of which were derogatory. During this time, the deputies were unable to reposition and secure the handcuffs. To gain control, she was secured against the patrol vehicle where they were able to reposition her handcuffs to the rear.

"Once she was secured in the back of the patrol vehicle, she began to kick at the doors and windows. Fearing she would damage the vehicle or hurt herself, she was removed from the vehicle and placed in a WRAP restraint."

3

Escapita later reported to the probation officer "she doesn't remember what happened that day and said, 'I was drunk and blacked out.' "

In December 2018, the Napa County District Attorney's Office filed a complaint in case No. 18CR004040 charging Escapita with grand theft of personal property (§ 487, subd. (a)) and resisting arrest (§ 148, subd. (a)(1)).

Subsequently, as summarized in the probation report pertaining to the second case, Escapita "was released on her own recognizance and failed to appear for a pre-preliminary hearing on February 21, 2019. A bench warrant was issued in the amount of $25,000.

"On April 19, 2019, she was admitted to this bail. On May 13, 2019, the defendant failed to appear for a pre-preliminary hearing; bail was forfeited and a bench warrant was issued in the amount of $50,000.00.

"On June 6, 2019, bail was reinstated. On June 19, 2019, the defendant again failed to appear for a pre-preliminary hearing; bail was again forfeited and a bench warrant was issued in the amount of $50,000.00.

"The defendant failed to appear at all three court hearings, once while on her own recognizance and twice while on bail."

When asked by the probation officer "why she did not appear to her court dates, [Escapita] said she wasn't able to attend because she did not have childcare for her two minor children."

In February 2020, the district attorney filed an amended complaint in case No. 20CRCR000150 charging Escapita with failing to appear while released on her own recognizance (§ 1320, subd. (b); counts one and four) and failing to appear while on bail (§ 1320.5; counts two and three). The amended complaint also alleged as an enhancement that Escapita committed a felony while on bail or own recognizance release. (§ 12022.1, subd. (b).)

On August 12, Escapita was arrested on the warrant.

4

On August 17, Escapita signed and initialed plea forms, noting she was pleading no contest to all charges in both cases. On the forms, Escapita wrote "PNC All; court indicates 17(b) [at] sentencing."[3] Defense counsel and the prosecutor signed the forms; the prosecutor, however, indicated he did not consent to the pleas.

The trial court held a hearing and stated it had received the plea forms, "with the indicated 17(b) at sentencing." The prosecutor "object[ed] to the Court's indicated," explaining "[t]his is felony conduct and she should be held accountable as such."

Escapita pleaded no contest to all charges in both cases. The trial court accepted the pleas.

On September 15, Escapita filed a statement of assets, which indicated she had two children, was unemployed, and was paying $700 in rent. She wrote "N/A" where asked to list her sources of income.

Also on September 15, the probation officer filed the pre-sentence report. Escapita stated she was receiving $1,085 per month in public assistance and $650 per week in unemployment benefits. She worked at a café from January 2015 to January 2016, but stopped working due to her pregnancy. Sometime later, Escapita worked at Old Navy but stopped working after one month due to difficulty paying childcare.

---

[3] Section 17, subdivision (b) provides: "When a crime is punishable, in the discretion of the court, either by imprisonment in the state prison or imprisonment in a county jail under the provisions of subdivision (h) of Section 1170, or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes under the following circumstances: [¶] (3) When the court grants probation to a defendant and at the time of granting probation, or on application of the defendant or probation officer thereafter, the court declares the offense to be a misdemeanor."

Escapita had a history of juvenile offenses, including an offense in 2011 for drawing a deadly weapon in the presence of another person in a rude, angry, or threatening manner (§ 417, subd. (a)(1)).  Escapita stated she had been smoking marijuana daily since age 13, ingesting ecstasy since age 15 and opiates since 2017, and drinking alcohol since age 16.  She last used marijuana, ecstasy, and alcohol while in Las Vegas where she was arrested and held in custody.

Escapita disclosed she had been diagnosed with PTSD, depression, and anxiety, and was taking medication to treat her depression.  Escapita previously had completed three substance abuse treatment programs, twice as a juvenile and once as an adult.  However, she was not then presently participating in substance abuse treatment or mental health counseling.

Based on the probation officer's evaluation, Escapita was at a "very high risk to reoffend."  The probation officer also determined:  "Considering the defendant's substance abuse history and mental health diagnoses, it will be recommended the defendant complete an assessment for substance abuse and mental health to determine the need for treatment.  She said she would like to enroll in Salvation Army's residential program."

The probation officer recommended Escapita be placed on three years' probation and that the trial court direct her to comply with numerous conditions, including those at issue here prohibiting her from possessing or owning "any firearm, ammunition, explosive, dangerous or deadly weapon"; prohibiting her from possessing or using marijuana or illegal substances, and requiring her to enroll in and complete "the Community Corrections Service Center Program," "a mental health assessment," "an alcohol and drug

6

problem assessment program," and "an outpatient treatment program or a residential treatment program."[4]

The probation officer also recommended that Escapita pay a $600 restitution fine (§ 1202.4) [$300 per case]; a $600 probation revocation restitution fine (§ 1202.44) [$300 per case]; a $180 criminal conviction assessment (Gov. Code, § 70373) [$30 per count, for six counts]; a $240 court security fee (§ 1465.8, subd. (a)(1)) [$40 per count, for six counts]; a $182 jail booking fee (Gov. Code, § 29550, subd. (a)); a $560 presentence report fee (former § 1203.1b, subd. (a)); and a probation supervision fee in an amount not to exceed $240 (*ibid.*)

The trial court held the sentencing hearing on September 15. Escapita's counsel requested that the court strike the recommended probation conditions prohibiting weapons and marijuana, explaining "there [were] no weapons involved" and "there [was] no marijuana issue in this matter."

In response, the prosecutor stated, "The defendant physically struggled with officers when she was arrested, so that is a violent offense. Not a strike violent offense, but . . . she used violence to try to evade capture, and so I think a no weapons term is fully appropriate."

The prosecutor continued, "I remember reading in the probation report that the defendant indicated she was in a blackout state at the time. I would also ask the court to impose all of the substance abuse recommendations recommended by probation based on her own admission that she was in a blackout state."

---

[4] The probation officer recommended these conditions in both cases, but the probation report assigns different numbers to them as to each case.

7

Following the parties' arguments, the trial court announced its decision. As to case No. 18CR004040, the trial court on its own motion reduced the charged felony grand theft to a misdemeanor pursuant to section 17, subdivision (b).

Similarly, in case No. 20CR000150, the trial court reduced counts one, two, three, and four to misdemeanors pursuant to section 17, subdivision (b). It found the special allegation "falls off as a matter of law" and dismissed it pursuant to section 1385.

The trial court granted Escapita probation for a term of three years for both cases. It also directed Escapita to comply with numerous conditions that were recommended in the probation report. As relevant here, the trial court imposed the condition prohibiting Escapita from owning or possessing weapons, "based on [the prosecutor's] recitation." The court also imposed the conditions prohibiting her from using alcohol, marijuana, and illegal substances, explaining "I did read that you said you were blacked out during this whole thing. That's concerning. You got a kid now . . . . [¶] You have two, so come on, you know." In addition, the court imposed conditions requiring Escapita to enroll in and complete the Community Correction Service Center program, a mental health assessment, an alcohol and drug problem assessment program, and an outpatient treatment program or a residential treatment program.

The trial court also ordered Escapita to pay a $300 general restitution fine (§ 1202.4, subd. (b)) [$150 per case]; a $300 probation revocation restitution fine, stayed pending successful completion of probation (§ 1202.44) [$150 per case]; a $240 criminal court assessment fee (§ 1465.8) [$40 per conviction]; and a $180 conviction assessment fee (Gov. Code, § 70373) [$30 per conviction]. Escapita did not object to any of the fines and fees imposed.

8

The trial court stated it was "waiving the Pre-sentence Report fee of $560 and a Supervision Fee of [$]240 based on [Escapita's] ability to pay." Also, as noted in the minute orders, "Indigent Defense Reimbursement Fees are ordered in the amount of $500.00, following financial hearing, the court waives $500.00." The court also waived the $182 booking fee.

Escapita appeals from the judgments in both cases.

## DISCUSSION

### Probation Conditions

Escapita challenges on various and multiple grounds several probation conditions that the trial court imposed. She first argues the trial court abused its discretion in imposing conditions prohibiting the possession or use of both weapons and marijuana. Additionally, she contends the weapons condition is unconstitutionally overbroad. Escapita further maintains that the conditions requiring her to enroll in and complete the Community Correction Service Center program, a mental health assessment, an alcohol and drug problem assessment program, and an outpatient treatment program or a residential treatment program constituted impermissible delegations of judicial authority to the probation officer. We address each claim of error in turn, beginning with those pertaining to the weapons condition.

#### *Weapons Prohibition*

Escapita argues the weapons condition[5] is invalid under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*) and unconstitutionally overbroad. We reject the first argument and conclude the second has been forfeited.

---

[5] The probation report lists the weapons condition as number 14 in both cases.

9

Trial courts are granted broad discretion under section 1203.1 to impose a condition of probation. (*People v. Penoli* (1996) 46 Cal.App.4th 298, 302 (*Penoli*).) This discretion, however, is not unlimited, and a probation condition will be considered invalid if it: " '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' " (*Lent, supra*, 15 Cal.3d at p. 486.) This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term. (*Id.* at p. 486, fn. 1; see *People v. Balestra* (1999) 76 Cal.App.4th 57, 65, fn. 3 (*Balestra*).) "As such, even if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality." (*People v. Olguin* (2008) 45 Cal.4th 375, 379–380.) We review the validity of a probation condition under *Lent* for abuse of discretion. (*People v. Moran* (2016) 1 Cal.5th 398, 403.)

Escapita asserts the weapons condition is invalid because it had no relationship to her offenses, relates to conduct that is not in itself criminal, and is not reasonably related to preventing future criminality. The second prong is not at issue: the People agree possession or ownership of weapons is not necessarily unlawful. (*In re Martinez* (1978) 86 Cal.App.3d 577, 581 (*Martinez*).) The issues, therefore, are whether the condition has a relationship to Escapita's crimes and whether the condition is reasonably related to future criminality.

With respect to the first prong in *Lent*, it is true that no weapons were involved in any of Escapita's present offenses. Therefore, we determine

10

whether the weapons condition had " 'no relationship to the crime[s] of which the offender was convicted.' " (*Lent*, *supra*, 15 Cal.3d at p. 486.)

As for the third prong of *Lent*, while weapons played no role in the underlying offenses, we disagree with Escapita that the weapons prohibition is not reasonably related to preventing future criminality. Our Supreme Court in *In re Ricardo P.* (2019) 7 Cal.5th 1113 (*Ricardo P.*) described application of *Lent*'s third prong—whether the condition is reasonably related to future criminality—to an electronic search condition. The high court explained "*Lent*'s third prong requires more than just an abstract or hypothetical relationship between the probation condition and preventing future criminality." (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1121.) That said, the Supreme Court did not "go that far" to "requir[e] a nexus between the condition and the underlying offense." (*Id.* at p. 1122.) "We have said that 'conditions of probation aimed at rehabilitating the offender need not be so strictly tied to the offender's precise crime' [citation], so long as they are 'reasonably directed at curbing [the defendant's] future criminality' [citation]. For example, courts may properly base probation conditions upon information in a probation report that raises concerns about future criminality unrelated to a prior offense." (*Ibid.*) In any case, *Lent*'s third prong "contemplates a degree of proportionality between the burden imposed by a probation condition and the legitimate interests served by the condition." (*Ibid.*)

We conclude the weapons condition was appropriate in light of these principles. In attempting to evade arrest following her theft of retail merchandise, Escapita, while "drunk and blacked out," lost self-control and repeatedly kicked the door and window of the patrol vehicle, despite the deputies' commands for her to stop doing so. As a result, Escapita had to be placed in a physical restraint device to prevent her from injuring herself or

11

the deputies or damaging the vehicle. As the prosecutor described, Escapita "physically struggled with officers when she was arrested, so that is a violent offense. Not a strike violent offense, but it was she used violence to try to evade capture, and so I think a no weapons term is fully appropriate." Thus, even if the charged crimes did not involve the use of weapons, the trial court could reasonably conclude from Escapita's conduct that she lacked the ability to control her behavior and was subject to violent outbursts.

Additionally, the record discloses Escapita has a past juvenile offense for drawing a deadly weapon in the presence of another person "in a rude, angry, or threatening manner" or "in any fight or quarrel" (§ 417, subd. (a)(1)).

Given these circumstances, a weapons prohibition could reasonably be viewed as a means of protecting against the potential for an even more serious crime in the future. As such, we reject Escapita's assertion that the imposition of the weapons condition was "solely based on speculation."

We are also unpersuaded by Escapita's attempts to distinguish *In re Frankie J.* (1988) 198 Cal.App.3d 1149 (*Frankie J.*), *In re Jimi A.* (1989) 209 Cal.App.3d 482 (*Jimi A.*), and *Martinez*, *supra*, 86 Cal.App.3d 577, on the ground that these cases "have upheld weapons restrictions" that were based on "felony and/or violent offenses."

In *Frankie J.*, a weapons restriction was upheld involving two male assailants who "severely beat, raped, and sodomized" a victim. (*Frankie J.*, *supra*, 198 Cal.App.3d at pp. 1151, 1153–1154.) *Frankie J.* held that "[a]lthough no weapon was seen by or used upon the victim, there is substantial evidence the use of a weapon was contemplated." (*Id.* at p. 1153.) As such, the court found that those facts were "sufficient to warrant the weapons restriction" because "[it] 'bears a reasonable relationship to the

12

crime he committed and to preventing future criminality.' " (*Id.* at p. 1154.) It is undisputed that similar evidence is not presented in this case, but this factual distinction is not dispositive concerning application of the third prong in *Lent*. As noted above, even in the absence of evidence showing weapons was involved in Escapita's underlying offenses, *Ricardo P.* explains that " 'conditions of probation aimed at rehabilitating the offender need not be so strictly tied to the offender's precise crime' [citation], so long as they are 'reasonably directed at curbing [the defendant's] future criminality' [citation]." (*Ricardo P., supra,* 7 Cal.5th at p. 1122.) Thus, *Frankie J.* is both legally and factually distinguishable and unhelpful to analyzing whether the weapons condition is reasonably related to preventing future criminality based on this record.

In our view, *Jimi A.* actually undermines, rather than supports, Escapita's position. *Jimi A.* provides an example where a weapons condition was upheld as reasonably related to preventing future criminality even though weapons were not involved in the crime for which the defendant was convicted. There, the defendant committed battery on an individual on school property. (*Jimi A., supra,* 209 Cal.App.3d at p. 485.) The appellate court found the weapons prohibition appropriate, explaining: "With regard to the weapons term, we note the violence associated with this matter. While it is true that the instant matter did not involve a deadly weapon, we note the impulsive nature of the attack clearly suggests the minor lacks self-control. We believe under these circumstances it appropriate for the court to limit defendant's possession of weapons out of caution for public safety." (*Id.* at p. 488.) Here, although Escapita did not commit a battery, her conduct, like the minor's in *Jimi A.*, was impulsive and violent—even in the presence of authority figures—suggesting a lack of control. Based on these

circumstances, we cannot say it was unreasonable for the trial court "to limit defendant's possession of weapons out of caution for public safety." (*Ibid*.)

Lastly, Escapita's attempt to distinguish *Martinez* also misses the mark. In *Martinez*, the defendant pleaded guilty to battery on a police officer after he was arrested for throwing a beer bottle at a police vehicle and was granted probation on condition that he refrain from possessing deadly or dangerous weapons and submit to warrantless searches and seizures of his person or property. (*Martinez, supra*, 86 Cal.App.3d at pp. 578–579.) The *Martinez* court invalidated the warrantless search condition. As cited by Escapita, the *Martinez* court held that a condition was valid only if there was "a factual 'nexus' between the crime, defendant's manifested propensities, and the probation condition." (*Id.* at p. 583.)

However, the reasoning of *Martinez* is undermined by the court's reliance upon a case, *People v. Keller* (1978) 76 Cal.App.3d 827, that has since been disapproved by the court that wrote it, finding it went "far beyond the *Lent* test" and was inconsistent with subsequent Fourth Amendment jurisprudence. (*Balestra, supra*, 76 Cal.App.4th 57, 66–67.) The *Martinez* court's emphasis on the required "factual 'nexus' " to the offense is also undermined by *Ricardo P.* As quoted, the Supreme Court rejected the argument that *Lent*'s third prong requires " 'a nexus between the probation condition and the defendant's underlying offense or prior offenses," because such a requirement "would essentially fold *Lent*'s third prong into its first prong. We have said that 'conditions of probation aimed at rehabilitating the offender need not be so strictly tied to the offender's precise crime' [citation] so long as they are 'reasonably directed at curbing [the defendant's] future criminality' [citation]." (*Ricardo P., supra*, 7 Cal.5th at p. 1122.) Since

14

*Martinez* has limited precedential and persuasive value, Escapita's effort to distinguish it from this case is unavailing.

For all of these reasons, Escapita has failed to demonstrate the weapons condition satisfies all three prongs of *Lent*. We conclude the trial court did not abuse its discretion in prohibiting Escapita from possessing or owning weapons as a condition of probation.

We turn now to Escapita's second argument that the weapons condition is unconstitutional because "it is not narrowly tailored to promote a compelling state interest"—an argument of constitutional overbreadth. (See *People v. Olguin, supra,* 45 Cal.4th at p. 384 [" '[A] probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad' "], quoting *In re Sheena K.* (2007) 40 Cal.4th 875, 890 (*Sheena K.*).) The People counter that Escapita did not object to the weapons condition on constitutional grounds and has thus forfeited such a challenge on appeal, and we agree.

An overbreadth challenge to a probation condition may be raised on appeal despite the failure to object at trial where it is claimed to be overbroad on its face and is "capable of correction without reference to the particular sentencing record developed at trial." (*Sheena K., supra,* 40 Cal.4th at pp. 887–889; accord, *People v. Patton* (2019) 41 Cal.App.5th 934, 946.) Escapita is not asserting a facial overbreadth challenge. Rather, she argues the weapons condition is overbroad based on the facts of her offenses and her "particular rehabilitative needs." Escapita has therefore forfeited her constitutional challenge on appeal.

Accordingly, we conclude the trial court properly imposed the probation condition prohibiting the possession or use of weapons.

15

***Marijuana Prohibition***

Escapita additionally challenges as invalid under *Lent* the probation condition prohibiting her from possessing or using marijuana.[6] As with the weapons condition, there is no dispute that the condition satisfies the second prong of *Lent*, as the possession and use of marijuana is not itself criminal in the State of California. We thus address whether the marijuana condition satisfies the first and third prongs of *Lent*.

The first *Lent* prong requires a relationship between the probation condition and the crime of which the defendant was convicted. (*Lent*, *supra*, 15 Cal.3d at p. 486.) Escapita argues "[a]lthough the probation report noted daily use of marijuana, there was no indication that marijuana was an issue when Ms. Escapita was arrested in the late evening and admitted to being drunk." Escapita unquestionably was under the influence of alcohol at the time of the grand theft and resisting arrest offenses, but the record does not indicate that Escapita was also under the influence of marijuana. We therefore resolve the first *Lent* prong in Escapita's favor and determine the marijuana-related probation condition had no relationship to the crimes of which Escapita was convicted.

A probation condition satisfies the third *Lent* prong if it "requires or forbids conduct which is not reasonably related to future criminality.' " (*Lent*, *supra*, 15 Cal.3d at p. 486.) In arguing that the marijuana condition is not reasonably related to future criminality, Escapita again relies on the fact that she was under the influence of alcohol, and not marijuana, when she committed the grand theft and evading arrest offenses. This fact, however, does not necessarily satisfy the third *Lent* prong. Escapita disclosed she has

---

[6] The probation report lists the marijuana prohibition as condition number 20 in case No. 18CR004040 and number 19 in case No. 20CR000150.

16

a history of using marijuana, ecstasy, opiates, and alcohol.  In fact, in addition to the marijuana condition, the trial court also imposed conditions prohibiting her from drinking alcohol and using illegal drugs, which Escapita does not challenge on appeal.  These circumstances suggest Escapita has issues with both alcohol and drug abuse.

Appellate courts have recognized an empirical connection between alcohol and drugs.  (See *People v. Beal* (1997) 60 Cal.App.4th 84, 87 (*Beal*).)  As stated in *Beal*, "It is well documented that the use of alcohol lessens self-control and thus may create a situation where the user has reduced ability to stay away from drugs.  [Citations.]  Presumably for this very reason, the vast majority of drug treatment programs . . . require abstinence from alcohol use." (*Ibid.*)  Given this connection, the *Beal* court concluded that "alcohol use may lead to future criminality where the defendant has a history of substance abuse." (*Ibid.*; see also *People v. Malago* (2017) 8 Cal.App.5th 1301, 1308 [upholding alcohol consumption, testing, treatment, and monitoring conditions as reasonably related to prevent future criminality where defendant had a history of alcohol, marijuana, and cocaine use]; *Balestra, supra*, 76 Cal.App.4th at pp. 68–69 [upholding alcohol and drug testing conditions to aid in probation compliance where alcohol involved in elder abuse incident]; *People v. Lindsay* (1992) 10 Cal.App.4th 1642, 1645 [alcohol-use condition reasonably related to defendant's sale of cocaine and future criminality because "[a] person's exercise of judgment may be impaired by the consumption of alcohol, and . . . , this could lead to [the defendant] giving in to the use of drugs"].)

The People cite to *People v. Cota* (2020) 45 Cal.App.5th 786, which upheld a no-alcohol condition where the defendant, who had pleaded guilty to carrying a concealed dirk or dagger, was a "habitual user of

methamphetamine and a daily user of marijuana." (*Id.* at pp. 788, 792.) Although alcohol was not involved in the incident, the court observed "alcohol is a drug—albeit a legal one" and noted the empirical nexus between drugs and alcohol that was described in *Beal*. (*Id.* at p. 792.) The *Cota* court stated: "It would make little sense to deprive Cota's probation officer of the power to direct Cota away from alcohol as a substitute mind-altering substance when his substance abuse history is so clearly demonstrated." (*Id.* at p. 793.) Accordingly, *Cota* determined that the imposition of the alcohol probation conditions was related to preventing future criminality. (*Ibid.*)

In so holding, *Cota* discussed *People v. Kiddoo* (1990) 225 Cal.App.3d 922 (*Kiddoo*), upon which Escapita relies to argue that the marijuana condition is invalid. (See *Cota, supra*, 45 Cal.App.5th at p. 792.) In *Kiddoo*, the appellate court struck a probation condition prohibiting alcohol because it was not related to the defendant's offense of possessing methamphetamine, despite a probation report indicating that the defendant had used illegal drugs and alcohol since he was 14 and was a current social drinker who sporadically used methamphetamine. (*Kiddoo*, at pp. 927–928.) The *Cota* court, the same court that decided *Beal*, stated it had "previously made clear that 'we disagree with the fundamental assumptions in *Kiddoo* that alcohol and drug abuse are not reasonably related and that alcohol use is unrelated to future criminality where the defendant has a history of substance abuse.' " (*Cota*, at p. 792, citing *Beal, supra*, 60 Cal.App.4th at p. 87; accord, *Balestra, supra,* 76 Cal.App.4th at p. 69.)

Escapita's underlying offenses demonstrated impaired judgment and loss of self-control, which were undisputedly caused by alcohol use. It is not unreasonable to view the use of substances that tend to impair judgment and ability to control behavior—whether alcohol or marijuana—as increasing the

risk of future commission of offenses of this type. Indeed, the probation officer ranked Escapita's alcohol and drug problem as "very high," a factor that supported his determination she was at a "very high risk to reoffend." Consistent with *Beal* and *Cota*, in light of Escapita's history of drug and alcohol abuse and the connection between substance abuse and her present offenses, we conclude the marijuana condition was reasonably related to preventing future criminality.

*People v. Cruz Cruz* (2020) 54 Cal.App.5th 707 cited by Escapita is easily distinguishable. In that case, a marijuana condition was invalidated under *Lent* because marijuana did not play a role in the defendant's decision to steal a vehicle and the defendant did " 'not currently suffer from a substance abuse problem.' " (*Id.* at pp. 711–712.) The probation report stated the defendant drank alcohol only on social occasions and had been smoking marijuana twice a month. (*Id.* at p. 710.) Since the defendant never had an alcohol or drug problem, and his underlying offense was not related to drugs or alcohol, the marijuana-related conditions were not reasonably related to preventing the defendant's future criminality. (*Id.* at p. 713.) As explained above, the same cannot be said of Escapita, who has a history of substance abuse and whose crimes were committed while under the influence of alcohol.

In sum and in short, we conclude the trial court did not abuse its discretion in imposing the marijuana-related condition.

### *Requirement to Enroll in and Complete Mental Health and Substance Abuse Assessments and Treatment Programs*

Escapita next challenges the probation conditions requiring her to enroll in and complete "the Community Correction Service Center program if required by the Probation Officer"; "a mental health assessment if directed by the Probation Officer"; "an alcohol and drug problem assessment program, if directed by the Probation Officer"; and "an outpatient treatment program or a

residential treatment program if required and as chosen by the Probation Officer."[7]  Escapita contends these conditions effected impermissible delegations of judicial authority to a probation officer.

Escapita acknowledges she failed to object to any of those conditions. But to the extent her claim is a facial challenge, it is not forfeited.  (*Sheena K.*, *supra*, 40 Cal.4th at pp. 887–889; *People v. Patton*, *supra*, 41 Cal.App.5th at p. 946.)

Article III, section 3 of the California Constitution provides, "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."  The broad discretion conferred on trial courts by section 1203.1 to formulate terms and conditions of probation "is not boundless; the authority is wholly statutory, and the statute furnishes and limits the measure of authority which the court may exercise."  (*People v. Cervantes* (1984) 154 Cal.App.3d 353, 356.)  One such limitation is that "no statutory provision sanction[s] a delegation of unlimited discretion to a probation officer" to implement or interpret probationary terms.  (*Id.* at p. 358.)  Instead, "these determinations are essentially judicial functions." (*Ibid.*)

As explained in *People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1358–1359:  "There are many understandable considerations of efficiency and practicality that make it reasonable to leave to the probation department the amplification and refinement of a [probation condition].  The court may leave to the discretion of the probation officer the specification of the many details that invariably are necessary to implement the terms of probation.  However,

---

[7] The probation report lists these conditions, respectively, as numbers 17, 18, 23, and 24 in the first case, and 16, 17, 22, and 23 in the second case.

the court's order cannot be entirely open-ended.  It is for the court to determine the nature of the prohibition placed on a defendant as a condition of probation."

Thus, where a trial court unequivocally imposes a requirement on the defendant, but subjects the defendant to the "approval" or "direction" of a probation officer, such delegations are permissible.  (*Penoli*, *supra*, 46 Cal.App.4th at pp. 307–309 [no impermissible delegation authorizing probation department to select residential drug rehabilitation program and determine whether successfully completed].)

As noted, the challenged conditions require Escapita to enroll in and complete various assessments and treatment programs "if required by the Probation Officer" or "if directed by the Probation Officer."  Escapita asserts these conditions "grant the probation officer unfettered authority to decide in the first instance whether Ms. Escapita should be required to participate in multiple treatment programs and/or mental health and drug and alcohol assessments, not merely to select a particular program that has been ordered by the court."  We agree.  As written, each of the challenged conditions appears to give the probation officer unfettered discretion to decide *whether* Escapita must enroll in the assessments or treatment programs in the first instance, not *how* she will be subjected to the conditions.

For this reason, we are unpersuaded by the People's citation to *In re David C.* (2020) 47 Cal.App.5th 657 (*David C.*) to justify the delegation.  In *David C.*, the minor challenged conditions requiring that he " 'submit to a psychological/psychiatric evaluation as directed by the probation officer,' " and that he " 'submit to any and all programs of psychological assessment at the direction of a treatment provider, including, but not limited to, ABEL Screening and post dispositional polygraph examinations.' "  (*Id.* at p. 668.)

21

The appellate court held the conditions were appropriate, noting that "determining the precise evaluations and assessments to which minor should submit in order to proceed with counseling is the type of detailed decision the trial court is 'poorly equipped to micromanage . . . .' " (*Id.* at p. 669.)

The challenged conditions in *David C.* are distinguishable from those here. In *David C.*, the conditions required the minor to submit to psychological/psychiatric evaluations and assessments "as directed by" or "at the direction of" the minor's probation officer or treatment provider. Such language indicates the court left to the discretion of the probation officer or treatment provider management over the details of the evaluations and assessments—a permissible exercise of delegation in accordance with *Penoli, supra*, 46 Cal.App.4th at pp. 307–309. Here, in contrast, the use of the "if required by the probation officer" language indicates that the trial court gave open-ended discretion to the probation officer to determine whether Escapita should be required to enroll in the assessments or programs at all.

Accordingly, we will strike probation conditions 17, 18, 23, and 24 imposed in case No. 18CR004040 (also conditions 16, 17, 22, and 23 in case No. 20CR000150) and remand for reconsideration. (Cf. *People v. Cervantes, supra*, 154 Cal.App.3d at p. 361 ["set[ing] aside" improper probation condition regarding restitution and remanding to trial court for exercise of discretion]; *Ricardo P., supra*, 7 Cal.5th at p. 1129 [affirming court of appeal decision "striking" improper juvenile probation condition].)

One additional note with respect to the condition requiring enrollment in the Community Corrections Services Center program. The record does not indicate the nature of this program. Thus, we are unable to discern whether the condition was appropriately imposed based on the facts of the case and the purpose for which the condition was imposed. It is also unclear whether

22

the condition is duplicative of other conditions requiring Escapita to enroll in a mental health assessment, an alcohol and drug problem assessment program, and an outpatient treatment program or a residential treatment program.  On remand, the trial court should reconsider whether this condition should be imposed, and if so, to modify the condition in light of the facts of the case and the purpose of the requirement to be imposed.

**Term of Probation**

When Escapita was sentenced, section 1203.1 provided that a trial court may grant felony probation "for a period of time not exceeding the maximum possible term of the sentence[.]"  If the "maximum possible term of the sentence is five years or less, then the period of suspension of imposition or execution of sentence may, in the discretion of the court, continue for not over five years."  (Former § 1203.1, subd. (a).)  The trial court here granted probation for three years.

Effective January 1, 2021, Assembly Bill No. 1950 (AB 1950) (2019–2020 Reg. Sess.) amended section 1203.1, subdivision (a) to limit the probation term for felony offenses to two years, except in cases of certain violent felonies.  (Stats. 2020, ch. 328, § 2; § 1203.1, subds. (a), (m).)

Escapita argues that she is entitled to the retroactive benefit of this legislation under *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*).  The People "do[] not contest the application" of the legislation to cases not yet final on appeal in light of *People v. Quinn* (2021) 59 Cal.App.5th 874, 879–885 and *People v. Sims* (2021) 59 Cal.App.5th 943, 956–958, both of which held that *Estrada*'s presumption of retroactivity applies to AB 1950, and therefore probationers whose cases were not yet final at the time AB 1950 went into effect are entitled to its ameliorative benefits.  We follow those cases and conclude Escapita is entitled to the benefit of AB 1950.

The remaining issue is the exact remedy to which Escapita is entitled. Escapita contends we can and should reduce her probation period from three years to two on our own. The People argue we should remand the matter to the trial court, reasoning remand "is beneficial to the probationer and the public" because the trial court on remand can "adjust, modify, or strike probation terms, so that they can be complied with before termination of probation or removed from consideration of whether the probation terminated successfully."

We need not determine whether remand is the appropriate remedy in all cases, since we must remand anyway in connection with the probation conditions requiring enrollment in assessments and treatment programs. Because trial courts already have the authority to modify the terms and conditions of probation any time before the termination of probation (see §§ 1203.2 and 1203.3), the parties can file whatever motions they deem appropriate to update the trial court on Escapita's status on probation. In considering any such motions, and even in the absence of any such motions, the trial court is directed to comply with AB 1950 in imposing any period of probation. (§ 1203.1, subd. (a).)[8]

<hr>

[8] Citing *People v. Stamps* (2020) 9 Cal.5th 685 (*Stamps*), the People additionally assert remand is required in this case to permit the People to withdraw from the plea agreement or the trial court to rescind its approval of the plea, and return the parties to the status quo ante. In *Stamps*, our Supreme Court concluded that a defendant was entitled to the benefit of an ameliorative change in the law—specifically, pursuant to Senate Bill No. 1393 (2017–2018 Reg. Sess.), he was entitled to have the matter remanded for the trial court to exercise its discretion to strike a serious felony conviction enhancement in the interests of justice. (*Stamps, supra,* 9 Cal.5th at p. 699.) However, because the serious felony conviction enhancement was imposed as part of a negotiated stipulated sentence, if the trial court exercised its discretion to strike the enhancement, the People and the trial court were permitted to withdraw approval of the plea agreement. (*Id.* at pp.

**Fines and Fees**

At sentencing, the trial court imposed a $300 general restitution fine (§ 1202.4, subd. (b)) [$150 per case]; a $300 probation revocation restitution fine, stayed pending successful completion of probation (§ 1202.44) [$150 per case]; a $240 criminal court assessment fee (§ 1465.8) [$40 per conviction]; and a $180 conviction assessment fee (Gov. Code, § 70373) [$30 per conviction].  Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), Escapita argues the trial court violated her due process rights by imposing these fines and fees without holding a hearing to determine whether she had the ability to pay them.

The facts of *Dueñas* are now well known.  "In a nutshell, *Dueñas*, *supra*, 30 Cal.App.5th at pages 1168–1169, held that a sentencing court violated the due process rights of a defendant who committed her acts out of poverty when it imposed certain mandatory fees and fines that lack a statutory exception without first making a finding the unemployed defendant (who suffered from cerebral palsy) had the ability to pay while she was on probation."  (*People v. Oliver* (2020) 54 Cal.App.5th 1084, 1100.)

*Dueñas* has spawned a plethora of cases, many of which have distinguished it on the facts before them, with many others holding that *Dueñas* was wrongly decided.  And it has generated other issues as well.  We

---

707–708.)  The defendant was not permitted " ' "to whittle down the sentence 'but otherwise leave the plea bargain intact . . . .' " ' " (*Id.* at p. 706.)  In contrast, where the defendant enters an open plea, the sentence can be modified because it is not imposed pursuant to a negotiated plea agreement and is therefore not inconsistent with a negotiated plea agreement.  (See *id.* at p. 700.)  Here, as Escapita states in her reply brief, she entered an open plea of no contest to all charged counts.  Thus, remand for the purpose of permitting the People withdraw from the plea and the trial court to rescind its approval of the plea is unnecessary.

need not weigh in on any of this here, in light of our remanding the matter for resentencing, to allow the trial court to modify Escapita's probation term in accordance with AB 1950 and reconsider the program enrollment probation conditions. Accordingly, on remand Escapita may raise, and the trial court will have the authority to consider, a challenge to any imposed fines and fees. (See *People v. Hill* (1986) 185 Cal.App.3d 831, 834 ["When a case is remanded for resentencing by an appellate court, the trial court is entitled to consider the entire sentencing scheme"]; *People v. Acosta* (2018) 29 Cal.App.5th 19, 26 ["on remand the trial court will have ' "the jurisdiction to modify every aspect of [appellant's] sentence" ' "].)

## DISPOSITION

The matter is remanded to the trial court to strike from the judgments, and reconsider, probation conditions 17, 18, 23, and 24 imposed in case No. 18CR004040, and conditions 16, 17, 22, and 23 imposed in case No. 20CR000150, requiring enrollment in substance abuse and mental health assessments or treatment programs. The trial court is further directed on remand to modify Escapita's period of probation consistent with AB 1950. On remand, Escapita may raise an objection to the fines, fees, and assessments imposed by the court based on her ability to pay. In all other respects, the judgments and orders of formal probation in both cases are affirmed.

26

_____
Richman, J.

We concur:


_____
Kline, P.J.


_____
Stewart, J.


*People v. Escapita* (A161303)